**SO ORDERED.**

**SIGNED this 22nd day of January, 2013.**



Janice Miller Karlin
United States Bankruptcy Judge

---

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In re:
**Donald Lee Fisher,**

**Case No. 05-44841**
**Chapter 13**

        **Debtor.**

_____

**Jan Hamilton, Trustee,**

        **Plaintiff,**

**Case No. 12-7014**

**v.**

**Adversary Proceeding**

**Donald Lee Fisher,**

        **Defendant.**

_____

### Memorandum Opinion and Order Denying
### Trustee's Complaint to Revoke Discharge and Denying
### Trustee's Objection to Exemptions

This matter is before the Court on Jan Hamilton, Chapter 13 Trustee's, Objection to Exemptions,[1] and his adversary complaint seeking revocation of Defendant Donald Lee Fisher's ("Fisher") discharge. The basis for both actions is the Trustee's belief that Fisher fraudulently claimed property in Bourbon County, Kansas as his exempt homestead.[2]

After a trial, the Court is ready to rule. This matter constitutes a core proceeding over which the Court has the jurisdiction and authority to enter a final order.[3]

## I.  **Findings of Fact**

Fisher filed his Chapter 13 bankruptcy petition on December 19, 2005.[4] In that petition, he listed 874 E. 650th Avenue, Arma, Kansas ("Arma property") as his "Street Address." Fisher did not indicate that he used a different address for mailing purposes, which information is specifically requested in a separate box on the petition form. On his Schedule A (real property), Fisher listed

---

[1] Doc. 115 in Case No. 05-44841.

[2] The adversary complaint also contained a second count concerning a fraudulent tax return allegedly filed by Fisher's son using Fisher's name and social security number. At the conclusion of the Trustee's case, the Court granted Fisher's uncontested motion for judgment as a matter of law on that count because the Trustee did not present any evidence in support of that claim. Therefore, only issues surrounding the homestead exemption remain to be decided.

[3] *See* 28 U.S.C. §§ 157(b)(2)(B) and (J) (core proceeding) and (1) (authority to hear core proceedings).

[4] Case No. 05-44841.

"Homestead Property in Bourbon County, KS" ("Bourbon County property") as the sole piece of real estate in which he had any legal or equitable interest. Fisher claimed the same Bourbon County property as his exempt homestead on both his original and amended Schedule C. Fisher did not reveal that the property he claimed as his homestead in Bourbon County was different than the Arma property where his wife lives, and the Trustee was unaware that the address in Arma, Kansas was not in Bourbon County.[5]

The Trustee believed the Arma property and the Bourbon County property were the same until Jeanette Fisher, Donald Fisher's wife, was deposed in her own bankruptcy case in January 2012. During that deposition, it was discovered that the Arma property was in an adjoining county, Crawford County, and was therefore not the same tract of property that Fisher was claiming as his exempt homestead. Jeanette Fisher's deposition testimony raised questions about whether Fisher was living independently at the undeveloped Bourbon County property, or at the Arma property with her, and whether the Bourbon County property was ever Fisher's true permanent residence.

---

[5] Fisher also indicated on his petition that his county of residence was Shawnee, which was clearly incorrect as the only two possible addresses for him are the property in Arma, Kansas, which is in Crawford County, and the property in Bourbon County. Although admittedly not relied on by this Court, the Court does note Fisher's bankruptcy was filed by a now deceased bankruptcy practitioner, and the vast majority of cases he filed were for residents of Shawnee County.

-3-

On February 13, 2012, within one year after Fisher received his discharge, the Trustee filed a motion to reopen his case for the purpose of investigating whether he had intentionally failed to disclose pre-petition assets and whether he improperly claimed the Bourbon County property as his exempt homestead.[6] After that motion was granted, the Trustee simultaneously objected to the exemption of the Bourbon County property and filed this adversary proceeding to revoke Fisher's discharge on the basis that it was obtained by fraud. According to the Trustee, Fisher fraudulently claimed the Bourbon County property as exempt, which allowed him to avoid paying the value of that property to his creditors through his Chapter 13 plan.

The Trustee alleged that Fisher's homestead was actually the Arma property because Fisher did not reside on the Bourbon County property at the time he filed his bankruptcy petition. More significantly, the Trustee alleged that even if Fisher lived on the Bourbon County property on the date he filed, such living arrangements were only temporary and therefore the Bourbon County property did not qualify as an exempt asset under Kansas law. Finally, the Trustee claimed that, by failing to disclose the fact that he had some legal or equitable interest in the Arma property and that it was a different tract than the Bourbon County property, Fisher deprived the Trustee of the opportunity to

---

[6] Doc. 104 in Case No. 05-44841.

Case 05-44841    Doc# 162    Filed 01/22/13    Page 4 of 22

object to the claim of exemption for the Bourbon County property and secure additional distributions for the benefit of Fisher's creditors.

At trial, Fisher testified he was effectively permanently separated from his wife and that he was, in fact, residing at the Bourbon County property at the time he filed for bankruptcy. Fisher further claimed that he listed the Arma property as his residence only because that was where he received his mail, and he never intended to mislead anyone into believing that he actually resided at that address. Fisher claims that he did not inform the Trustee that he was separated from his wife at the time of filing because he did not think it relevant to the proceeding. Fisher further explained that he excluded the Arma property from his schedules because it is titled solely in his wife's name, even though she has since testified that he "owns half" since it was acquired from his family.[7]

Additional facts will be discussed below.

## II. Discussion

### A. Trustee's Objection to Debtor's Homestead Exemption

---

[7] The claims in the preceding two sentences were not presented, by either side, as evidence at trial. Instead, they were raised by Fisher in his response to the Trustee's motion for summary judgment. Doc. 29 in Adv. No. 12-7014. Because the claims were not presented at trial, the Court does not consider them evidence and has not relied upon the claims in reaching a final decision in this case. They are provided here solely for background reference. Although Jeanette Fisher did testify by deposition that Donald Fisher owned half of the Arma property, the evidence presented at trial showed that the property is in fact titled solely in Jeanette Fisher's name.

The first issue the Court must determine is whether the Bourbon County property constituted Fisher's homestead on the date he filed his bankruptcy petition. Section 522 of the Bankruptcy Code governs exemptions.[8] Subsection (b) allows states to prohibit their citizens from choosing the federal exemptions set forth in subsection (d) and to require the use of state exemptions. Kansas has opted out of the federal plan and enacted its own exemptions.[9] Therefore, Kansas law determines whether the Bourbon County property constituted Fisher's exempt homestead. A debtor's exemption rights are determined as of the date of the filing of the petition.[10]

In bankruptcy, Federal Rule of Bankruptcy Procedure 4003 governs exemptions. Subsection (c) provides that "the objecting party has the burden of proving that the exemptions are not properly claimed." Further, "[i]n determining whether a debtor is entitled to claim an exemption, 'the exemption laws are to be construed liberally in favor of exemption.'"[11]

---

[8] 11 U.S.C. § 522.

[9] K.S.A. 60-2312.

[10] *Lampe v. Williamson (In re Lampe)*, 278 B.R. 205, 210 (10th Cir. BAP 2002) (holding that debtor's right to exemption is determined as of date petition is filed).

[11] *Lampe v. Williamson (In re Lampe)*, 331 F.3d 750, 754 (10th Cir. 2003) (quoting *In re Ginther,* 282 B.R. 16, 19 (Bankr. D. Kan. 2002)).

-6-

Pursuant to Kansas law, a homestead can only attach to land "occupied as a residence" by the owner and/or the family of the owner.[12] "Residence" means "domicile" or "the place adopted by a person as his place of habitation, and to which, whenever he is absent, he has the intention of returning."[13] In order to establish a homestead, a party must intend to occupy it as a homestead and must actually occupy it as a homestead within a reasonable time of filing (if not occupied on the date of filing).[14] The owner's intentions are critical in determining whether a homestead has been established.[15] Once a homestead is established, two elements are required to find that the homestead has been abandoned: removal from the property and an intent not to return.[16]

The first issue the Court must address is the Trustee's contention that the listing of the Bourbon County property on Schedule C was insufficient to assert an exemption claim. The Trustee claims that Fisher did not properly claim any homestead exemption because simply listing "Homestead Property in Bourbon County, Kansas" was too vague to constitute a proper exemption.

---

[12] K.S.A. 60-2301.

[13] *Beard v. Montgomery Ward and Co.*, 215 Kan. 343, 348 (1974).

[14] *In re Snook*, 134 B.R. 424, 425 (D. Kan. 1991) (citing *Security State Bank of Scott City v. Coberly*, 5 Kan. App. 2d 691 (1981)).

[15] *Id.* (citing *Smith v. McClintock*, 108 Kan. 833 (1921)).

[16] *Id.* at 425-26 (citing *In the Matter of the Estate of Fink*, 4 Kan. App. 2d 523 (1980)).

Case 05-44841   Doc# 162   Filed 01/22/13   Page 7 of 22

Although arising under varying contexts, a handful of courts have addressed the specificity requirements of bankruptcy schedules. In *Hardee v. Mitchell*, the Fourth Circuit Court of Appeals relied extensively on the Advisory Committee Notes to the bankruptcy schedules in stating:

> The 1991 Advisory Committee Notes to the Form 6 Schedules (Schedules A-J) explain that "[t]he schedules require a complete listing of assets and liabilities but leave many of the details to investigation by the trustee." 11 U.S.C.A. Official Bankr. Form 6, advisory committee's notes (West pamph.1998) (emphasis added). Indeed, the schedules were intended to be summaries that could serve as a quick and easy list of relevant information. The Notes state that Schedule C, for example, was simplified in 1991 by "eliminat[ing the] duplication of information provided" on other schedules. *See id.* Similarly, a former requirement in Schedule C that the debtor state the present use of property was "eliminated as best left to inquiry by the trustee." *See id.* The requirements for listing personal property in Schedule B also reflect the basic purpose of the schedules. The Notes state that this schedule requires that debtors declare whether they have "any property in each category on the schedule." *Id.* They add that the trustee "can request copies of any documents concerning the debtor's property necessary to the administration of the estate." *Id.* The Advisory Committee Notes elaborate that "Section 521(3) of the Code requires the debtor to cooperate with the trustee, who can administer the estate more effectively by requesting any documents from the debtor rather than relying on descriptions in the schedules which may prove to be inaccurate."[17]

Other courts have similarly held that the degree of specificity must be sufficient to provide enough information to allow the trustee to determine whether the trustee should inquire further into an asset, liability or exemption.

---

[17]*Hardee v. Mitchell,* 1998 WL 766699, 4 (4th Cir. 1998).

-8-

For example, in *Payne v. Wood*, the Seventh Circuit Court of Appeals held that "it would be silly to require a debtor to itemize every dish and fork," but "every bankrupt must do enough itemizing to enable the trustee to determine whether to investigate further."[18] And in *In re Furlong*, the court noted that "[t]he courts have generally agreed that if an asset is scheduled in a way that reasonably puts the trustee on notice of its existence and potential value, it may be abandoned under § 554(b)."[19] Similarly, in *In re Mohring*, the court held that "[t]here are, however, no bright-line rules for how much itemization and specificity is required. What is required is reasonable particularization under the circumstances."[20]

Based upon this standard, the Court finds that Fisher did properly claim the Bourbon County property as exempt. Admittedly, listing the real estate as "Homestead Property in Bourbon County, Kansas" was not the model of clarity, and the Trustee would have been well within his rights to require additional information. But at trial, Fisher credibly testified that because this is rural land with no house, and because he continued to get mail at his wife's house, he was not even aware of the actual street address of the property at the time he filed

---

[18] *Payne v. Wood*, 775 F.2d 202, 205-207 (7th Cir.1985).

[19] *In re Furlong*, 437 B.R. 712, 718-19 (Bankr. D. Mass. 2010).

[20] *In re Mohring*, 142 B.R. 389, 395 (Bankr. E.D. Cal. 1992).

his bankruptcy petition. Only after this litigation ensued did he consult with postal authorities to obtain a street address. For that reason, it was reasonable to simply list the property as being in Bourbon County, Kansas.

The description of the property is not in itself misleading — as would be the case, for example, if a debtor simply listed a "2009 Chevrolet" without further indicating that the vehicle was actually a 2009 Corvette ZR1. The admittedly brief description did properly identify where the property was located, and gave the Trustee enough information to allow him to further inquire, if he elected to do so.

The lack of specificity became an issue because the Trustee was not aware that the address given by Fisher as his residence in Arma, Kansas was located in Crawford, not Bourbon, County. The Court certainly does not fault the Trustee for not realizing this, or for not asking clarifying questions at Fisher's 11 U.S.C. § 341 meeting. And best practices for debtors' lawyers is to provide more detail. But the fact is that sufficient information was provided that disclosed the ownership of the property and could have led to such inquiry. The Court will not deny Fisher a homestead on the basis that he only listed the property as being located in Bourbon County, Kansas. The listing was sufficient to identify the existence of the property and enable the Trustee to inquire

-10-

further. Accordingly, the Schedule C description of the real property was sufficient to create a valid claim of exemption in the property.

The Trustee next claims that the Bourbon County property did not qualify as Fisher's homestead under Kansas law.[21] Although Jeanette Fisher was not a joint debtor in this case and the issue of Fisher and his wife each claiming a separate homestead exemption did not arise, the Court finds that its prior holding in *In re Hall*[22] provides some relevant guidance here. In *Hall*, the joint debtors each claimed a separate homestead, asserting that although they were still married, they lived apart and could each claim a separate homestead. The Court analyzed Kansas homestead law and ultimately found:

> Given the policy considerations this Court must utilize when determining exemption issues, as well as the treatment of other Kansas exemptions, the Court finds that married debtors may claim separate homesteads provided they can establish that both tracts of property qualify as a homestead. The Court notes that this holding is specifically limited to circumstances in which a husband and wife

---

[21] Any objection to exemptions typically must be made within 30 days after the meeting of creditors held pursuant to § 341 or within 30 days after any amendment or supplemental schedule is filed, whichever is later. Fed. R. Bankr. P. 4003(b)(1). An exception to this rule is made when the debtor fraudulently asserts a claim of exemption. In a case where fraud is present, a trustee may bring an objection to exemptions within one year from the closing of the case. Fed. R. Bankr. P. 4003(b)(2). The Trustee filed his objection to exemption on May 4, 2012, which was more than 30 days after Fisher filed his Amended Schedule C (Doc. 37 filed May 18, 2006), but within one year of the date the case was closed on May 16, 2011. Therefore, the Trustee's objection to exemption would only be timely if Fisher fraudulently claimed the homestead exemption. Because the Court finds, as detailed below, that the exemption was properly claimed, the Court does not need to address the issue of fraud.

[22] 385 B.R. 722 (Bankr. D. Kan. 2008).

-11-

have each legitimately established a separate homestead pursuant to Kansas law, which separate homesteads were not created for the purpose of defeating or defrauding creditors. It is only in those admittedly rare situations where a husband and wife have remained married, but can show that they have elected to and do live apart on a permanent basis, that this holding will be applicable.[23]

Having examined the facts in this case, including the testimony presented both by way of deposition and live testimony, the Court finds that Fisher was entitled to claim the Bourbon County property as his exempt homestead. Fisher testified that there existed significant marital discord as a result of their son moving back into what was at that time the family home in Arma, Kansas. Fisher testified he feared that his son would cause him physical harm—for reasons he detailed, and elected to move out of the Arma property.

Fisher testified he lived for a time on the Bourbon County property in a slide-in camper on the back of a pickup he owned, before eventually moving into a pull-behind trailer he placed on the otherwise vacant land. Although the trailer does not have electric service, Fisher does have a generator that he uses when he needs power, and it is heated in the winter by propane. Fisher also testified that because the trailer is not connected to a constant water supply, he brings in water for the trailer in a large tank. Because of the lack of a constant water supply, Fisher typically bathes at a neighbor's house, in a stock tank, or

---

[23] *Hall,* 385 B.R. at 731.

-12-

down at the creek located on the land. Fisher also stated that he rarely uses the toilet in the trailer, opting instead to either use the restroom at a local convenience store or to simply go outdoors in the woods. Fisher pays a woman he knows to do all of his laundry.

Fisher testified consistently that he was living at the Bourbon County property at the time he filed his bankruptcy petition, and that he intended for that to be his permanent residence. This testimony regarding the permanency of his living arrangements is supported by the fact that it is more likely than not that he continues to live in the trailer on the Bourbon County property, more than seven years after he filed his petition. Although it is difficult to believe anyone would wish to live in such conditions, especially during what can be harsh Kansas winters, Fisher's testimony was believable. He convinced the Court that he only used the Arma property to receive his mail, and that his permanent, albeit extremely rustic, residence was on the Bourbon County property.

In addition to his own testimony, Fisher presented two additional witnesses to support his claim that he was living on the Bourbon County property at the time he filed his bankruptcy petition. One witness was a neighbor who runs a hunting lodge on property located near the Bourbon County property. That witness testified that he saw Fisher coming and going from the

property on a regular basis, usually very early in the morning. Another witness testified Fisher gave him hunting access to the Bourbon County property and that he had, in fact, hunted on the property approximately 50-60 times. He indicated that he had often seen Fisher on the property. The hunter also testified that he had once briefly been inside the trailer before beginning to hunt.

Although the Trustee argued that these witnesses likely saw Fisher on the land because he needed to visit daily to feed and water cattle—not because he lived there, the Court simply found the combined testimony more likely than not buttressed Fisher's story. The Trustee did offer evidence suggesting that Fisher's living arrangements on the Bourbon County property were not permanent and that the property did not qualify as Fisher's homestead. The most direct evidence of this was the deposition testimony of Fisher's wife.[24]

Ms. Fisher was questioned about whether her husband resided with her at the Arma property. She admitted that Fisher had lived on the Bourbon County property, but that "[i]t was just temporary" and that him living there was "[j]ust off and on."[25] She further indicated that he would stay at the Bourbon County property "[t]ill we got things straightened out . . . ." Ms. Fisher then later

---

[24] This deposition was taken in connection with Jeanette Fisher's bankruptcy, Case No. 11-11883 on January 6, 2012. The parties stipulated to the admission of Jeanette Fisher's deposition testimony in lieu of her live testimony.

[25] Jeanette Fisher Deposition, Exhibit §, 122:10 - 123:14, Jan. 6, 2012.

-14-

testified that by January 2012, Fisher had returned to reside full time with her at the Arma property. When questioned again about the time period when Fisher permanently stopped residing on the Bourbon County property, she responded "[l]ast year, a couple years maybe, I don't know for sure."[26]

The Trustee also presented evidence of a local resident he hired to photograph the entrance into the Bourbon County land. This witness testified he observed the property in September and October 2012 from the road adjacent to the main entrance to the property. On one of his visits, the witness noted that it had rained heavily two to three days before his visit, and that he did not observe any tire tracks or ruts in the mud leading in or out of the gate to the property. The Trustee argued that this evidence showed that Fisher had not been entering or leaving the property on a daily basis — which arguably showed he was not permanently residing on the property.

But Fisher's rebuttal testimony on this issue was believable, at least in part because the photographs admitted into evidence supported his story. He testified the reason there wouldn't have been ruts or tire tracks, after a rain, is because the road leading into the property is covered with rock for some distance. No tire tracks or ruts are ever created on the uphill portion of the

---

[26] *Id.* at p. 124:19-20.

property that is visible from the road regardless of how much rain the property has received or how much automobile traffic there is on the property.

The Trustee's other evidence concerning Fisher's residence at the time he filed for bankruptcy protection are found in his own bankruptcy petition. On page one of the Voluntary Position, Fisher indicated that the "Street Address of Debtor" was 874 E 650th Avenue, Arma, KS. Two boxes below that address is another box that requests "Mailing Address of Debtor (if different from street address)". Fisher left that box blank, which caused the Trustee to conclude that his street address and mailing address are the same.

The testimony of Fisher's daughter, Julie was critical to this Court's ultimate findings. Julie Fisher testified that she knew her parents' relationship was poor, that when she was considerably younger and lived at home (before this bankruptcy), they had frequently argued but had tried to conceal their marital problems from the public as much as possible. She has observed the trailer on the Bourbon County property, but admitted she did not know whether her father permanently lived on the property.

What Ms. Fisher did know concerning her mother's mental state at the time of her deposition testimony, however, was compelling. Ms. Fisher testified that she has noticed a considerable amount of confusion and memory loss in her mother over the past five years. For example, Ms. Fisher testified that she once

-16-

asked her mother for a simple recipe that her mother had known off the top of her head for years, but her mother was unable to remember the recipe. In addition, once when Ms. Fisher was speaking with her mother on the telephone, her mother asked about the health of a close family friend's parent. When Ms. Fisher reminded her mother that the friend's parent had passed away several years ago and that they had attended the funeral together, her mother seemed completely surprised and had no recollection of either the death or the funeral.

In light of all of the evidence presented, the Court finds that this case essentially comes down to the testimony of Fisher and his wife, Jeannette Fisher. Those are the only two witnesses who provided any direct evidence as to Fisher's living arrangements at the Bourbon County property. The circumstantial evidence presented by the other witnesses, although relevant, was not substantial and did little to persuade the Court.

As with most cases of this nature, the credibility and reliability of the witnesses, as a whole, are crucial to the Court's decision. Although Mr. Fisher did not appear credible in every instance,[27] overall the Court found his testimony on the main issues of residence and permanency of residence to be consistent

---

[27] For example, the Trustee confronted him with a live recording of his testimony during his 11 U.S.C. § 341 meeting, where he said he "lived" at the Arma property. He quibbled about this, which was not credible, but ultimately satisfied this Court that this particular testimony by this elderly and fairly uneducated man was not dispositive in light of all the other evidence received at trial.

and truthful. Fisher made what is an almost unbelievable story about his living conditions believable.

Conversely, the Court was unable to observe Jeanette Fisher testify, as her testimony was presented only by way of a deposition transcript. Jeanette Fisher did testify that her husband's living arrangements at the Bourbon County property were only temporary, and that he had returned to the Arma property. And admittedly Jeanette Fisher had much less motivation to fabricate her testimony, since where Fisher lived (and intended to live) on the date of his bankruptcy some 7 years earlier would have little, if any, impact on her own bankruptcy case. But Jeanette Fisher's memory and ability to correctly recall events was called into serious doubt by the live testimony of her daughter — who this judge found to be extremely credible. Without the ability to actually see Jeanette Fisher testify and determine the accuracy of her memory of the events, especially in light of her daughter's testimony questioning her memory, the Court simply does not have as much faith in her testimony.

In light of the standard by which the Court must review the testimony and other evidence admitted at trial, and the liberality of construing claims of exemptions, the Court finds that the Trustee has failed to meet his burden to establish that Fisher 1) did not live at the Bourbon County property at the time he filed his bankruptcy petition, and 2) did not intend for that to be his

-18-

permanent residence. Fisher's claimed homestead exemption is presumed to be valid, and it is the Trustee's burden to rebut the presumption.[28] Although a fairly close call, the weight of evidence presented by the Trustee was at least matched, if not exceeded, by the evidence presented by Fisher. Because the Trustee has the burden of proof in this action, the Court finds in favor of Fisher and overrules the Trustee's objection to Fisher's homestead exemption claim.

## B. Intent to Defraud by Description of Homestead

The Trustee seeks to revoke Fisher's discharge pursuant to 11 U.S.C. § 1328(e). Under that section, the Court may revoke Fisher's discharge if the Trustee shows that (1) the discharge was obtained through fraud and (2) the moving party did not know of the fraud until after the discharge was granted. The burden of proof rests upon the Trustee, the party seeking revocation of the discharge, and the party seeking revocation must satisfy, by a preponderance of the evidence, all of the elements of proof enumerated below.[29]

The Trustee timely sought revocation because he filed the motion to revoke within one year from the entry of discharge. In addition, the Court finds that Trustee did not learn of the alleged fraud until the deposition of Jeanette Fisher

---

[28] Fed. R. Bankr. P. 4003(c). *See also In re Hodes*, 402 F.3d 1005, 1010 (10th Cir. 2005) (holding that objecting party bears burden of proof on an objection to a claimed exemption by a preponderance of the evidence that the exemption was improper).

[29] *In re Knupp*, 461 B.R. 351, 354 (Bankr. W.D. Va. 2011).

-19-

in early 2012, which was after Fisher received his Chapter 13 discharge. Therefore, the only issue is whether Fisher obtained his discharge by fraud.

A party seeking revocation of a Chapter 13 debtor's discharge on the basis of fraud may establish a debtor's fraudulent attempt (1) through circumstantial evidence, including an inference drawn from the debtor's behavior and conduct, or (2) by proving that the debtor possessed a reckless indifference for the truth.[30]

The Trustee contends that Fisher fraudulently claimed the Bourbon County property as his exempt homestead, when his actual homestead was the Arma property. This fraudulent action, according to the Trustee, shielded the value of the Bourbon County property from Fisher's creditors, and allowed Fisher to obtain a discharge despite having not paid his creditors an amount equal to what they would have received had Fisher's estate been liquidated.

Based upon the Court's prior ruling that Fisher properly exempted the Bourbon County property, revocation of Fisher's discharge on that basis is not warranted. In other words, Fisher cannot be found to have fraudulently claimed an exemption in property when he was, in fact, entitled to that exemption. But even if the Court had found in the Trustee's favor regarding the objection to exemption, the Court finds that the Trustee failed to establish Fisher committed fraud in claiming the homestead exemption or in obtaining his discharge.

---

[30] *Id.* at 356.

-20-

Fisher's listing the Arma property as his residence rather than the Bourbon County property appears to be simply a case of an error on the schedules caused by Fisher not understanding the question asked. Fisher provided clear testimony that he always used the Arma property to receive mail, but that was not where he actually lived. Where he actually lived had apparently not been assigned a street address at that time.

There is little question that Fisher truly considered the Bourbon County property to be his permanent residence at the time he filed his petition, and, therefore, his homestead. Although it would have been correct to list the Bourbon County property as his residence, and list the Arma property as his mailing address, the Court does not believe his failure to complete the petition in that fashion was fraudulent. This is especially true in light of the fact that Fisher did not even know the actual address of the Bourbon County property until early 2012.

Neither the evidence as a whole, nor Fisher's demeanor in particular, leads this Court to believe that he intended to defraud the Trustee or any creditor by the way he filled out his bankruptcy schedules. Without question, the schedules could and should have been more clear. But the Court cannot find that Fisher acted with any fraudulent intent in how he executed the schedules.

## III.   Conclusion

The Trustee's Objection to Exemptions is overruled. The Court finds that Fisher was entitled to claim the Bourbon County, Kansas property as his exempt homestead at the time he filed his bankruptcy petition in 2005. In addition, the Court finds that the Trustee has failed to establish that Fisher obtained his Chapter 13 discharge by fraud, and denies the Trustee's request to revoke that discharge.

**It is, therefore, by the Court ordered** that the Trustee's Objection to Exemptions is denied.

**It is further ordered** that judgment will be entered in favor of the Defendant Donald Lee Fisher and against the Plaintiff Jan Hamilton, Chapter 13 Trustee, on the Trustee's adversary complaint seeking revocation of discharge.

# # #

Case 05-44841   Doc# 162   Filed 01/22/13   Page 22 of 22